## IN THE COURT OF APPEALS OF IOWA

No. 20-1335
Filed February 3, 2021

**IN THE INTEREST OF A.P., K.P., A.P., and K.J.,**
**Minor Children,**

**S.J., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.


        The mother appeals the termination of her parental rights to four children.

**AFFIRMED.**


        Sara Strain Linder of Bray & Klockau, P.L.C., Iowa City, for appellant

mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Kelly D. Steele, Cedar Rapids, attorney and guardian ad litem for minor

children.


        Considered by May, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to A.P., K.P, A.P., and K.J, who range in ages from nine years old to two years old.[1]  The juvenile court concluded the statutory grounds for termination were met under Iowa Code section 232.116(1)(f) (2020) as to the oldest three children and under section 232.116(1)(h) as to the youngest child.  The mother does not contest this determination.  On appeal, she argues the juvenile court should have given her additional time to work toward reunification and it would be detrimental to the children to disrupt their bond with her.

"Our review of termination proceedings is de novo."  *In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020).  And "[o]ur primary concern is the best interests of the children."  *Id.*

This case reflects a mother's struggle.  And unfortunately, the mother and her family have been the subject of Iowa Department of Human Services (DHS) and juvenile court involvement off and on since 2006.  This particular chapter began in August 2019, when DHS petitioned for temporary removal after the mother admitted using methamphetamine within the previous week and stated she had "a mental breakdown."  The court ordered removal, and all four children subsequently tested positive for methamphetamine.  The youngest two children also tested positive for cocaine.

---

[1] The oldest three children share a biological father.  His parental rights were also terminated.  The biological father of the youngest child was not identified, but the rights of "any unknown/unidentifiable biological father" of K.J. were also terminated.  No father appeals.

But the destructive behaviors did not improve. Between the children's removal and the final day of the termination hearing in September 2020, the mother struggled with use of methamphetamine, lack of employment, lack of stable housing, inconsistent contact with her children, and lack of mental-health treatment. Based on the evidence at the termination hearing, the mother was in largely the same place in September 2020 as she was in August 2019.

After failing to attend the first two days of the termination hearing, on August 18 and 31, the mother attended the final day—September 30. Early on in this case, the mother tested positive for methamphetamine three times, twice in September and once in October 2019. After those positive tests, she quit completing drug tests for DHS. She did not complete substance-abuse treatment, and, at the termination hearing, the mother admitted using methamphetamine "two months ago." When she did appear for the hearing, the mother testified she had a substance-abuse evaluation scheduled approximately two weeks later. Yet, while the mother's mental health was an ongoing concern for DHS, the mother did not attend mental-health therapy. She testified she was taking medication at one point but, due to a disagreement with her psychiatrist, she stopped seeing the doctor and taking the medication. The mother was not involved with mental-health treatment or counseling and did not appear to have a plan to start. Regarding the children, the mother went months without seeing or having contact with them and recognized that "made them feel abandoned and lost and sad." Still, the mother asked the court for an additional six months and reported she was "making [her] goal actually less than six months."

In the end, the juvenile court did not grant the mother's request for additional time, concluding:

> [The mother's response to services was erratic from the beginning. She has done nothing for months. She failed to keep in touch with DHS and the providers, even though her testimony made it quite clear that she is fully capable of communicating with a wide variety of people in person, by phone, and through internet programs. She knowingly and willfully failed to appear for the permanency hearing and for the evidentiary termination trials on August 18 and August 30, 2020. There is no reason to believe that [she] can or will do any of the things she needs to do to regain custody of her children. [Her] love for her children is not in question, but her lack of commitment to her children over the past year has been shocking. The Court can only conclude that [the mother] has been pulled completely under by her mental health and substance abuse problems.

We do not disagree with the juvenile court's assessment. The death of the maternal grandmother in November 2019 and the outbreak of COVID-19 certainly did not help the mother achieve reunification with her children. But we cannot ignore that the mother did not show progress at any stage since the children's removal. Even before the grandmother's death, the mother continued to test positive for methamphetamine. And even before COVID-19 impacted in-person visits, the mother absented herself from her children's lives. While the mother blames the pandemic for some of her lack of involvement in services, she was not engaged before the outbreak. With nothing more to go on than her stated intention to do better, we, like the juvenile court, cannot say the mother should get more time to work toward reunification. *See In re A.A.G.*, 708 N.W.2d 85, 92–93 (Iowa Ct. App. 2005) (noting that we must consider permanency with a sense of urgency and keep in mind it is the children who bear the brunt of unsuccessful extensions).

Finally, the mother argues termination of her rights is not in her children's best interests. She couches this as a best-interests claim, but she does not rely

on the best-interests framework established in section 232.116(2). *See in re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) ("[T]he court is required to use the best-interest framework established in section 232.116(2) when it decides what is in the best interest of the child[ren]. The primary considerations are 'the child[ren]'s safety,' 'the best placement for furthering the long-term nurturing and growth of the child[ren],' and 'the physical, mental, and emotional condition and needs of the child[ren].'" (citation omitted)). Instead, she argues that disrupting her bond with the children would be detrimental to them and cites section 232.116(3)(c), which allows the court to forego termination when there is "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The exceptions to termination in section 232.116(3) are permissive, not mandatory, and the parent bears the burden to prove one should be applied to save the parent-child relationship. *In re A.S.*, 906 N.W.2d 467, 475-76 (Iowa 2018). The mother did not meet that burden. She points to evidence the children were disappointed when she failed to attend visitation. We are confident the children love and miss their mother and she them. But that is not enough to trigger this exception. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). The mother has not proved that the disadvantages of termination overcome the ongoing safety concerns that would come with denying termination. *See id.* The application of the exception is not warranted here.

We affirm the termination of the mother's parental rights to her four children.

**AFFIRMED.**